## BRANCH ET AL. *v.* CITY OF CHARLESTON ET AL.

1. In *Tomlinson* v. *Branch*, 15 Wall. 460, and *City of Charleston* v. *Branch*, id. 470, this court held that the respective roads and property of the two companies, which had become consolidated in the hands of the South Carolina Railroad Company, retained their original *status* towards the public and the State the same as if the consolidation had not taken place; that the entire line of road between Branchville and Charleston was subject to taxation ; and that "*prima facie* the railroad terminus and dépôt in Charleston and the property accessory thereto belong to the South Carolina Canal and Railroad Company portion of the joint property."

2. The holding, that, if it could be fairly shown that any of that company's property in Charleston was acquired by the South Carolina Railroad Company for the accommodation of the business belonging to its original roads, or for the joint accommodation of the entire system of roads under its control, such property would, *pro tanto* and in fair proportion, be exempt from taxation, was intended to meet the case of such property as the present company might have acquired in Charleston, either separately or in conjunction with the old company, had no consolidation taken place, and had the line between Branchville and Charleston used by both remained the property of the old company.

3. In carrying out that principle, any repairs or improvements made on the old line or the property of the old company would become a part thereof, and be subject to taxation. An item, therefore, for replacing tracks and side-tracks within the city limits, as it fairly belongs to the old road, should have been taxed *in toto* and not *pro tanto*.

APPEAL from the Circuit Court of the United States for the District of South Carolina.

In *City of Charleston* v. *Branch*, 15 Wall, 470, the decree of the Circuit Court of the United States for the District of South

Carolina was reversed, and the record remitted with instructions to proceed in conformity with the opinion of this court.

The Circuit Court ordered a special master to report : —

1st, What property of the South Carolina Railroad Company was acquired by it for the accommodation of the business of its original roads, or for the joint accommodation of the entire system of roads under its control; and of such property, how much, and in fair proportion, should be exempt from taxation.

2d, What property of the South Carolina Railroad Company has been acquired by it directly under its own charter, and for purposes connected with its original road, that such property may be decreed exempt from taxation.

3d, What property, if any, besides that not directed to be apportioned, and that acquired by the South Carolina Railroad Company under its own charter, and belonging to the South Carolina Railroad Company, is exempt from taxation.

The master reported that : —

" The real estate within the present limits of the city of Charleston, now owned by the South Carolina Railroad Company, consists of two separate and well-defined parcels of land. The first is a long, narrow strip of land, lying between Meeting and King Streets, and extending from Hudson Street to the northern boundary of the city. Upon this, the dépôts, shops, yards, and railroad tracks of the company are located. This property embraces : —

" 1st, Various lots, purchased by the South Carolina Canal and Railroad Company, prior to December, 1837, and vested in the South Carolina Railroad Company by the act of 1843. This property cost $25,205, and this was probably its value when acquired by the South Carolina Railroad Company. Its present assessed value is $99,600. This increased value of $74,395 is entirely owing to the workshops, dépôts, and other improvements which have been put upon the land by the South Carolina Railroad Company since 1843, the value of all other lands in the city having, in the mean time, greatly depreciated. According to the testimony of Mr. Magrath, the president of the road, all the dépôts and other buildings existing prior to that time have been entirely destroyed or removed, and replaced by others of a far more costly and substantial character.

" 2d, Various lots, purchased by the Louisville, Cincinnati, and Charleston Railroad Company, between December, 1837, and February, 1843. The lots are now valued in the aggregate at $2,300.

" 3d, Various lots, purchased by the South Carolina Railroad Company since 1814, and now valued at $177,400.

" Prior to 1849 all of this land was without the corporate limits of the city of Charleston. By the act passed on the nineteenth day of December, 1849, the city limits were extended, and then they took in, for the first time, the property of the South Carolina Railroad Company.

" The second parcel of land belonging to the company lies in the eastern portion of the city, on Cooper River. It consists of various lots, purchased by the South Carolina Railroad Company between the years 1853 and 1870. Its present value is $94,900. The history of this purchase is as follows : The South Carolina Canal and Railroad Company was not authorized to cross the limits of the city. It had only power to come to the boundary line of the city, and the city council were authorized to permit the extension of its road through the public streets and lands of the city. (A. A. 1832.) In 1840, the legislature authorized the South Carolina Railroad Company to extend their road to some one or more of the wharves in Charleston (A. A. 1840) ; and, in 1845, adopted a joint resolution, declaring that they regarded it as highly desirable that the company should forthwith lay down a track to connect the dépôt with the wharves of Charleston in such manner as might afford free access and competition to all.

" The evidence shows that the property in the eastern part of the city was purchased to carry out that purpose, and that it is the intention of the company to locate its dépôts at that point as soon as the means to make the connection can be raised. Though not in actual use, there is no doubt that this property has been acquired by the South Carolina Railroad Company for the joint accommodation of the entire system of roads under its control. This is also true of all the other property (with an inconsiderable exception) now owned by the South Carolina Railroad Company, whether purchased from the South Carolina Canal and Railroad Company or other parties. The whole property which can, with any propriety, be said to have been purchased by the South Carolina Railroad Company directly under its own charter, for purposes connected *exclusively* with its original road, is the property purchased by it under the name of the Louisville, Cincinnati, and Charleston Railroad Company before 1843, and when the union of that company and the South Carolina Canal and Railroad Company had not been thought of. And this property, even if it is properly to be regarded as having been purchased exclusively for the South Carolina

Railroad, ceased to be so used after 1843, and from that time to the present has been used for the joint accommodation of the entire system of roads.

"I am, therefore, of opinion that all the property set forth in the schedule as having been owned by the South Carolina Canal and Raiload Company, with the appendages and appurtenances thereof, as they existed at the time of the transfer to the South Carolina Railroad Company, are liable to taxation. I find that the value of this property at that time was $25,205, its cost price, and that the increased value given to it by the dépôts, workshops, railroad tracks, and other improvements since put upon it by the South Carolina Railroad Company, is $74,395. These improvements come under the category of property acquired by the South Carolina Railroad Company under its own charter, and must be taxed accordingly.

That of the company's property in Charleston, acquired by the South Carolina Railroad under its own charter, for the joint accommodation of the entire system of roads under its control, so much as is properly apportionable and applicable to that part of the line which extends from Branchville to Columbia and Camden, is exempt from taxation. This applies to all property purchased by the South Carolina Railroad Company since 1843. Its value, including the improvements put upon the land purchased from the South Carolina Canal and Railroad Company, is $346,695.

"What proportion of this property should be exempt from taxation? The length of the road is the only mode which has been suggested by either side of estimating this.

"The length of the road from Charleston to Hamburg is one hundred and thirty-six miles; from Branchville to Columbia, sixty-eight miles; and from Kingville to Camden, thirty-eight miles. If, therefore, I am right in supposing that it was the intention of the Supreme Court to exclude the South Carolina Railroad Company from exemption from taxation, in reference to that portion of the road acquired from the South Carolina Canal and Railroad Company, which extends from Charleston to Branchville, and which is now used jointly by the two roads, 106–242 of this property is exempt from taxation.

"The personal property owned by the company within the city limits is appraised at $45,750. It was all acquired by the South Carolina Railroad Company, under its own charter, for the joint accommodation of all the roads under its control; and the same rule must be applied to it as has been adopted in reference to the real estate similarly acquired."

Exceptions were filed to the report of the master by both the plaintiffs and defendants. A supplemental report was filed by the master, which embraced the testimony of the president of the South Carolina Railroad Company, which was to the effect that all the tracks below Mary Street must have been constructed by the South Carolina Railroad Company. All the rails now on the track between Line Street and Mary Street were laid by the South Carolina Railroad Company. The cross-ties now on the track were also put there by the South Carolina Railroad Company, as was every thing connected with the track.

The following decree was thereupon passed by the court: —

" This case came up on the report of the special master, and the exceptions thereto on the part of the plaintiffs and the defendants, and the report thereon.

" The master reports that the various lots of land purchased by the South Carolina Canal and Railroad Company, prior to December, 1837, and vested in the South Carolina Railroad Company by the act of 1843, are taxable *in toto* only in the condition in which they passed into the hands of the latter company, and that the improvements which have been put upon the land by the South Carolina Railroad Company since 1843 come under the category of property acquired by the South Carolina Railroad Company under its own charter, and so taxable only *pro tanto*. To this ruling the city council excepts, and claims that all the improvements on the land, in the shape of dépôts, workshops, railroad tracks, &c., before or since 1843, must be held taxable, inasmuch as said improvements are superstructures and fixtures upon the said lands, and not separable therefrom. I am of opinion that so much of this exception as refers to the dépôts, workshops, and other buildings, erected by the South Carolina Railroad Company, on the lands acquired from the South Carolina Canal and Railroad Company, is well taken, and so much of the master's report as holds that these improvements,' valued in the report at $74,395, are taxable only *pro tanto*, is overruled. I am satisfied by the evidence that the tracks and sidetracks within the city limits have all been replaced by the South Carolina Railroad Company since 1843, and are used for the joint accommodation of the united system of roads under its control, and are, therefore, taxable only *pro tanto*, according to the standard reported by the master. The same rule is also to be applied to the stationary engines, tools, machinery, &c., reported by the master as of the value of $20,750.

" All other exceptions by plaintiffs and defendants are overruled, and the report of the master, except as herein above modified, is confirmed and made the decree of the court."

From which decree both parties appealed to this court.

Mr. A. G. Magrath and Mr. James Conner for Branch *et al.*
Mr. D. T. Corbin, contra.

MR. JUSTICE BRADLEY delivered the opinion of the court.

These cases require but very little discussion, as they have already been before the court and substantially settled in *Tomlinson* v. *Branch* and *City of Charleston* v. *Branch*, reported in 15 Wall., pp. 460, 470. The result to which we came in those cases was substantially this: that the respective roads and the property of the two companies, which had become consolidated in the hands of the South Carolina Railroad Company, — namely, that of the Canal and Railroad Company, and that of the Louisville and Charleston Railroad Company, — respectively retained their original *status* towards the public and the State, the same as if they had not been consolidated under a single proprietorship. As one of these roads has become taxable, and the other has not, the rights of the State and the public growing out of this accidental diversity may sometimes raise questions of some embarrassment. This occasions the only difficulty remaining to be solved in these cases. From Branchville to Charleston there is but one road, and that is a part of the original road of the Canal and Railroad Company, used in common for the accommodation of both branches of the property. The Louisville and Charleston Railroad Company had a chartered right to extend their road to Charleston, but were met by the exclusive privileges of the elder company; and hence the purchase of its property and the ultimate consolidation. Now, the fact that the elder company had this exclusive privilege, shows that, even if the consolidation had not taken place, the old road would have continued to do the work of both companies between Branchville and Charleston, and this part of the line would have been now subject to taxation. It does not follow, therefore, that this part of the road, though used for the accommodation of both branches, should be regarded as divisible into proportional parts, one subject to taxa-

tion, and the other not.   It is to be regarded as simply the road and property of the old company; in the hands of the new company it is true, but subject to all the liabilities of its original charter.   Hence we held that the entire line of road between Branchville and Charleston is subject to taxation; and that *prima facie* the railroad terminus and dépôt in Charleston and the property accessory thereto belong to the elder portion of the joint property.   But inasmuch as the charter right of the present company extended to Charleston, we further held, that if it could be fairly shown that any of the company's property there was acquired by the present company for the accommodation of the business belonging to its original roads, or for the joint accommodation of the entire system of roads under its control, such property would, *pro tanto* and in fair proportion, be exempt from taxation.   This was intended to meet the case of such property as the present company might have acquired in Charleston, either separately or in conjunction with the old company, had no consolidation taken place, and had the line between Branchville and Charleston, used by both, remained the property of the old company.   Of course, in carrying out this principle, any repairs or improvements made on the old line or the property of the old company would become a part thereof, and be subject to taxation.   But newly acquired property might not be.   This is the general principle.   The method of carrying it out in detail admits of some latitude for the exercise of deliberation and judgment.   We have examined the report of the special master to whom the matter was referred, and the review of that report by the court below, and we think that a result was reached corresponding in the main to the principle which we have endeavored to establish.   There is but one item which we regard as calling for any interference with the decree appealed from; that is the item of $25,000 for replacing the tracks and side-tracks within the city limits, which we think fairly belongs to the old road, and should have been taxed *in toto*, and not *pro tanto*.

*With this modification, decree affirmed.*